b

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| JASMINE BRIGGS, Plaintiff | CIVIL DOCKET NO. 1:22-CV-02185 |
| VERSUS | DISTRICT JUDGE JOSEPH |
| POPULAS FINANCIAL GROUP, INC., ET AL., Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

REPORT AND RECOMMENDATION

Defendant Populus Financial Group, Inc. ("Populus") filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction or, in the Alternative, to Compel Arbitration. ECF No. 9.

Because Briggs's claims fall within the scope of the Arbitration Act and are enforceable by Populus, Populus's Motion to Compel Arbitration (ECF No. 9) should be GRANTED.

But because Briggs's employment-related claims are fully arbitrable, Populus's Motion to Dismiss (ECF No. 9) should also be GRANTED.

I.  Background

Plaintiff Jasmine Briggs ("Briggs") filed a Petition, in the Louisiana 9th Judicial District Court in Rapides Parish, against Populus and its unnamed insurer ("ABC Insurance"). ECF No. 1-1 at 3. Briggs asserts claims pursuant to: (1) Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act of

1978 ("PDA"), 42 U.S.C. § 2000e(k); (2) the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, *et seq.* and 29 C.F.R. Part 825; and (3) the Louisiana Employment Discrimination Law ("LEDL"), La. R.S. 23:301, *et seq.*

Briggs contends she worked for ACE Cash Express ("ACE") for several years. ACE was renamed Populus in 2019. ECF No. 9-2. Briggs contends Populus denied her early maternity leave pursuant to the FMLA because her doctor did not specify the reason she needed to take maternity leave early, and denied her part-time work as an accommodation. However, Briggs was given short-term disability unemployment compensation. Briggs gave birth on July 28, 2021. Briggs was then given another 8 weeks of short-term disability unemployment compensation. ECF No. 1-1 at 5-6. When Briggs did not return to work, she was terminated in January 2022.

Briggs contends she experienced discrimination and harassment in violation of Title VII and the LEDL, and that her rights under the FMLA were violated. She seeks damages for past and future lost wages, benefits, and other compensation, reinstatement, punitive damages, attorney fees, and costs. ECF No. 1-1 at 12.

Populus removed on the basis of federal question jurisdiction, 28 U.S.C. § 1331. ECF No. 1. Populus then filed a Motion to Dismiss or, alternatively, a Motion to Compel Arbitration. ECF Nos. 9, 17. Briggs opposes those motions. ECF Nos. 11, 12, 14.

## II. Law and Analysis

### A. Populus's Motion to Compel Arbitration should be granted.

#### 1. Briggs does not dispute that she signed an arbitration agreement or that her claims fall within its scope.

The Arbitration Act, 9 U.S.C. § 1, et seq., governs the issue of the arbitrability. *See Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24 (1983). The substantive provisions of the Arbitration Act preempt state law and govern all written arbitration agreements in contracts connected to transactions involving interstate commerce. *See Collins v. Prudential Insurance Company of America*, 1999-1423 (La. 1/19/00), 752 So.2d 825, 827.

The Arbitration Act "directs courts to issue a stay of litigation of a particular dispute if the parties have a written agreement to arbitrate. 9 U.S.C. § 3. A court can compel parties to arbitrate a dispute when a party to an arbitration agreement refuses to submit to arbitration. 9 U.S.C. § 4." *Reynolds v. Brown & Root, Inc.*, 2004 WL 3733401, at *5–6 (E.D. Tex. 2004), *affirmed,* 170 Fed. Appx. 297 (5th Cir. 2006)

The Fifth Circuit developed a two-prong inquiry for deciding whether parties should be compelled to arbitrate their disputes. *See OPE International, L.P. v. Chet Morrison Contractors, Inc.*, 258 F.3d 443, 445-46 (5th Cir. 2001). The first prong requires a court to determine whether the parties agreed to arbitrate. *See OPE International, L.P.*, 258 F.3d at 445-46. Two factors are considered in making this determination: (1) whether a valid agreement to arbitrate exists between the parties;

and (2) whether the dispute in question is within the scope of the arbitration agreement. *See OPE International, L.P.*, 258 F.3d at 445-46.

In determining whether there is a valid arbitration agreement between the parties, courts apply state contract law. *Webb v. Investacorp, Inc.,* 89 F.3d 252, 258 (5th Cir. 1996) (citing *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944 (1995)). In applying state law, however, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself must be resolved in favor of arbitration." *Webb,* 89 F.3d at 258 (citing *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Jr. University,* 489 U.S. 468, 475–76 (1989)).

The second prong is to determine "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Webb,* 89 F.3d 252, 258 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 628 (1985)). In other words, a court must consider whether any federal statute or policy renders the claim non-arbitrable.

Populus contends Briggs contractually agreed to binding arbitration of any pay or employment disputes. Populus submitted a copy of Briggs's signed 2009 employment application that included an arbitration clause (ECF No. 9-3 at 5):

> I agree to submit any claim or dispute regarding my employment or arising from this application (including, but not limited to, hiring, transfer and pay disputes) to binding arbitration to be administered by the American Arbitration Association pursuant to its applicable rules. The Company also agrees to arbitrate any disputed. If hired, I

> understand that agreement to the Company's Employee Disputed Resolution Program (EDRP) will be a required term and condition of my employment.

Also in 2009, Briggs signed an acknowledgement that she had received ACE's three-step Employee Dispute Resolution Program ("EDRP") policy (ECF No. 9-5):

> I acknowledge that I have been provided ACE America's Cash Express' Employee Dispute Resolution Procedure, and understand I am expressly bound by and exclusively required to use the procedure. I further acknowledge that my consent to the EDR Procedure is a term and condition of employment.

The EDRP policy explains that the claims covered by the program include claims for discrimination such as disability discrimination (including allegation of a failure to accommodate), FMLA claims, retaliation claims, and termination. ECF NO. 9-4.

Briggs does not dispute that she signed the arbitration agreement, and does not contend that her claims do not fall within the scope of the arbitration agreement.[1] Nor does Briggs assert that any law or policy makes her claims non-arbitrable.

### 2. The arbitration agreement is enforceable by Populus.

Instead, Briggs contends the arbitration agreement was exclusively between herself and ACE, and that she never consented to arbitration with Populus. ECF No. 14 at 7. Briggs argues that ACE became a new corporation when it became Populus.

Susan Wells ("Wells"), Vice President of Human Resources and records custodian for Populus, submitted an unsworn statement that shows ACE formally

---

[1] All employment contracts, except those expressly excluded by 9 U.S.C. § 1, are covered by the Arbitration Act. *See Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 119 (2001).

5

changed its name to Populus on June 18, 2019 and certified the records submitted for Populus.  ECF No. 9-6.  Populus submitted certified copies of the amendment of its articles of incorporation, changing its name from "ACE Cash Express, Inc." to "Populus Financial Group, Inc."  Only the name was changed in that amendment.  Populus also showed that the Certificate of Amendment was filed with the Texas Secretary of State.

"The change of a corporation's name is not a change of the identity of a corporation and has no effect on the corporation's property, rights, or liabilities." *Alley v. Miramon*, 614 F.2d 1372, 1384 (5th Cir.1980); *see also Campbell Harrison & Dagley, L.L.P. v. PBL Multi-Strategy Fund, L.P.*, 744 Fed. Appx. 192, 197-98 and n. 15 (5th Cir. 2018), *cert. den.,* 139 S. Ct. 1272 (U.S. 2019); *In Matter of Torch, Inc.,* 1996 WL 185765, at *5 (E.D. La. 1996); *Town v. Haynesville, Inc. v. Entergy Corp.,* 42,019 (La. App. 2d Cir. 2007), 956 So.2d 192, 196, *writ den.*, 2007-1172 (La. 2007), 964 So.2d 334; *Pro Source Roofing, Inc. v. Boucher*, 36,269-CA (La. App. 2d Cir. 7/24/02), 822 So.2d 881, 884.

In *Yanez v. Dish Network, L.L.C.*, the district court held that, pursuant to Texas law, a corporate name changed did not affect the contractual obligations of the parties existing prior to the name change, so a business entity with a new name could invoke an arbitration agreement that was signed by the same company prior to the name change. *See Yanez v. Dish Network, L.L.C.*, 2021 WL 4691909, at *8-*9 (S.D. Tex. 2021).

Briggs points to a press release of June 20, 2019 that stated ACE had a "new corporate identity." ECF No. 14 at 3. Briggs contends that use of the term "identity" indicates a new corporation was formed. However, the term "identity" appears to refer to ACE's rebranding with a name change. It did not refer to a new corporation. The same document also states: "ACE Cash Express announced today that it is changing its corporate name to Populus Financial Group. The name change reflects . . . ." ECF No. 12-2.

Populus explains in its brief (ECF No. 17) that it continues to do business as ACE for some of its services due to name recognition, but that ACE and Populus are the same company. Populus further explains that neither is a subsidiary of the other and points out that they have the same federal Employer Identification Number ("EIN").

Although Briggs complains that Populus has not submitted any proof of its corporate entity structure, it is clear that the corporate amendment changed only its name. Therefore, ACE and Populus are the same corporation and Populus is a continuation of the business. Briggs's arbitration agreement with ACE continued in force with the company under the new name of Populus.

### 3. The arbitration agreement does not have to be written or signed to be valid.

Briggs also contends that Populus did not sign the arbitration agreement. She contends the employment application, with the arbitration agreement, was

exclusively between herself and ACE. Briggs also contends that Populus had its employees (including Briggs) sign various documents to reflect the name change–payroll documents, HR documents, insurance documents–but that an arbitration provision was not included in those documents. ECF No. 14 at 7.

"When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally. . . should apply ordinary state-law principals that govern the formation of contracts." *See First Options of Chicago v. Kaplan,* 514 U.S. 938, 944 (1995); *see also Carson v. Higbee Co.,* 149 Fed. Appx. 289, 291 (5th Cir. 2005) ( "Where, as here, the issue is whether the parties have a valid and enforceable agreement to arbitrate, courts apply the contract law of the state governing the agreement.").

Under Louisiana law,[2] a valid contract requires capacity, consent, a lawful cause, and a valid object. *See Granger v. Christus Health Central Louisiana*, 12-1892 (La. 6/28/13), 144 So. 3d 736, 760-61; see also La. C.C. arts. 1918, 1927, 1966, 1971. Consent is "established through offer and acceptance," which may generally "be made orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent." La. C.C. art. 1927. "[I]t is the burden of the party seeking to enforce a contract to show the contract exists." *FIA Card Services, N.A. v. Weaver*, 10-1372 (La. 3/15/11), 62 So. 3d 709, 719 (citing La. C.C. art. 1831). Accordingly,

---

[2] The parties agree that Louisiana law applies.

Populus has the burden of proving the contract exists by a preponderance of the evidence. *See Lasseigne*, 2017 WL 1788292 at *5 (citing *Grant v. Houser*, 469 Fed. Appx. 310, 315 (5th Cir. 2012)).

As set forth above, Populus shows that Briggs signed an employment application with an arbitration clause in it, as well as an Employee Dispute Resolution Program that also provided for arbitration. There is jurisprudential support for enforcing an arbitration clause contained in an employment application. *See Velazquez v. Brand Energy & Infrastructure Services, Inc.,* 781 F. Supp. 2d 370, 376 (W.D. La. 2011) (citing *McBride v. Mursimco, Inc.,* 2004 WL 1459565, at *2 (E.D. La. 2004), and *Rogers v. Brown,* 986 F. Supp. 354, 360 (M.D. La. 1997)); *see also Freeman v. Austin Maintenance & Construction, Inc.,* 2016 WL 7229289, at *2 (E.D. La. 2016) ("Arbitration agreements contained in employment applications are routinely enforced by federal courts."); *Cellular One , Inc. v. Boyd,* 94-1783 (La. App. 1st Cir. 1995), 653 So.2d 30, 34 (a noncompetition clause in an employment application is an enforceable contract).

Briggs contends that Populus was not a party to the contract between she and ACE. Therefore, Populus cannot enforce the contract. Briggs's argument rests on the premise that Populus and ACE are two separate and distinct corporate entities.

Because, as discussed above, Populus and ACE are the same company with a changed name, Populus was a party to the arbitration agreement with Briggs. Therefore, the arbitration agreement is enforceable between Briggs and Populus.

Briggs's employment application with ACE, which included the arbitration agreement, remained in effect when the corporation changed its name to Populus.

Because Briggs' claims against Populus are fully arbitrable pursuant to the arbitration clause in her employment application, Populus's Motion to Compel Arbitration (ECF No. 9) should be GRANTED.

### B.   Populus's Motion to Dismiss should also be granted.

Populus' Motion to Dismiss the federal action should also be granted.

"Section 3 provides that when claims are properly referable to arbitration, that upon application of one of the parties, the court shall stay the trial of the action until the arbitration is complete. 9 U.S.C. § 3." *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992). However, because all of Briggs's claims are arbitrable and must be submitted to arbitration, staying the action will serve no purpose. "The weight of authority clearly supports dismissal of the case when *all* of the issues raised in the district court must be submitted to arbitration." *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d at 1164; *see also Fedmet Corp. v. M/V Buyalyk*, 194 F.3d 674, 676 (5th Cir. 1999) (where all claims were subject to arbitration, the district court did not abuse its discretion in granting the motion to compel and dismissing the case without prejudice).

10

Because all of Briggs's claims are subject to arbitration and there do not appear to be any potential prescription issues,[3] Populus' Motion to Dismiss (ECF No. 9) should also be granted and the case should be dismissed without prejudice.

### III. Conclusion

Based on the foregoing, IT IS RECOMMENDED that Populus' Motion to Compel Arbitration (ECF No. 9) be GRANTED.

IT IS ALSO RECOMMENDED that Populus' Motion to Dismiss (ECF No. 9) be GRANTED and the case should be DISMISSED WITHOUT PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy

---

[3] "A dismissal without prejudice is a dismissal that occurs without any adjudication on the merits. The dismissal of an action without prejudice leaves the parties as though the action had never been brought whereas a dismissal with prejudice is a 'drastic remedy to be used only in those situations where a lesser sanction would not better serve the interest of justice.'" *Graphic Packaging Int'l, Inc. v. DuCharme, McMillen, & Associates, Inc.*, 2013 WL 3490863, at *2 (M.D. La. 2013) (citing *Nabors v. HSS Systems, L.L.C.*, 2012 WL 3111628, at *9 (W.D. La. 2012), *report and recommendation adopted*, 2012 WL 3111622 (W.D. La. 2012)). Where there are potential prescription issues, equity dictates that a matter should be stayed rather than dismissed. *See Nabors*, 2012 WL 3111628, at *9.

11

of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this 20th day of July 2023.

_____
Joseph H.L. Perez-Montes
United States Magistrate Judge